IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALAN WILLIAMS, | : | |
| Plaintiff, | : | Case No. 2:04-cv-995 |
| v. | : | Judge Holschuh |
| JEFFREY A. ROOSE, et al., | : | Magistrate Judge Abel |
| Defendants. | : | |
| | : | |

**MEMORANDUM OPINION & ORDER**

After Columbus police officers broke up a protest aimed at Franklin County Children Services, *pro se* Plaintiff Alan Williams filed suit under 42 U.S.C. § 1983 against Officer Jeffrey Roose, Columbus Police Chief James Jackson and the Columbus Police Department, alleging violations of his First, Fourth, and Fourteenth Amendment rights.  This matter is currently before the Court on several pending motions: (1) Defendants' motion for summary judgment (Record at 26); (2) Plaintiff's motion for leave to amend his complaint (Record at 36); (3) Defendants' motion for a protective order (Record at 38); and (4) Defendants' motion to strike Gerald Napier's affidavit (Record at 42).

**I.      Background**

On March 20, 2003, Plaintiff Pastor Alan Williams attempted to remove his 14-year-old daughter, Lakisha, from Children's Hospital against the advice of her doctors.  Because of the severity of Lakisha's medical condition, the hospital contacted Franklin County Children Services ("FCCS").  FCCS, with the assistance of two plain clothes Columbus police officers, took Lakisha into temporary custody so that she could continue to receive medical treatment.

In response to this incident, Plaintiff created an advocacy group called Family Protection. It was designed to support those wrongfully accused of child endangering, and to guard families against alleged abuses by FCCS. According to Plaintiff, Family Protection was intended to be a branch of the ministry of his church, Jesus Peoples Evangelistic Center. During the week of October 20, 2003, Plaintiff and two members of his church, Shawn Herold and Gerald Napier, protested in front of the Franklin County Courthouse on behalf of Family Protection. They wore sandwich boards, passed out literature about Family Protection, and solicited signatures on a petition. They also solicited donations which they planned to use for additional signs and literature about Family Protection. (Napier Dep. at 129; Williams Dep. at 69-70).

According to Darlene Sayre, a Deputy Bailiff and Control Room Operator for the Franklin County Municipal Court, the protestors were blocking the revolving doors going into the courthouse, and several individuals complained to her about the overly aggressive solicitation tactics being used. In response, she contacted a Columbus Police Court Liaison Officer for assistance. (Sayre Aff. ¶¶ 3-5; Ex. 4 to Mot. Summ. J.).[1]

According to Plaintiff's complaint, Columbus police officer Jeffrey Roose and another unidentified officer repeatedly threatened to arrest Herold and Napier for soliciting charitable donations without a permit in violation of Columbus City Code § 525.03. Plaintiff alleges that, on October 24, 2003, Officer Roose issued citations to Herold and Napier for violating that ordinance, and confiscated the sandwich boards, literature, monetary contributions, and petitions.

---

[1] Plaintiff denies that they were blocking the revolving doors. For the reasons discussed in this Memorandum Opinion and Order, this dispute does not constitute a genuine issue of material fact. Plaintiff further objects to the use of Sayre's affidavit because she was not included on Defendants' witness list. However, as Defendants note, the parties had agreed not to make initial disclosures.

Plaintiff was not present in front of the courthouse when the citations were issued, but when he was informed of the citations, he did make an unsuccessful attempt to retrieve the property that was seized.

On September 8, 2004, Plaintiff, unrepresented by counsel, filed suit in the Franklin County Court of Common Pleas against Officer Roose, Chief James Jackson, and the Columbus Police Department, seeking recovery under 42 U.S.C. § 1983 for alleged violations of his First, Fourth, and Fourteenth Amendment rights.  He also claims that Officer Roose harassed the protestors, and that Chief Jackson allowed two plain clothes officers to assist FCCS in the wrongful removal of Plaintiff's daughter from his custody.  Plaintiff seeks compensatory and punitive damages.

Defendants, who removed the case to federal court based on federal question jurisdiction, have moved for summary judgment on all of Plaintiff's claims.  Before turning to the merits of that motion, the Court turns first to the other motions that were subsequently filed.

**II.     Plaintiff's Motion for Leave to Amend the Complaint**

On November 1, 2005, Plaintiff moved for leave to amend his complaint.  He claims that he has recently become aware of the names of others involved in the alleged violations and seeks to add them as defendants.  However, Plaintiff did not identify the individuals he wishes to add, and did not submit a copy of the proposed amended complaint with his motion, as required by the local rules.  Defendants object to Plaintiff's motion, urging the Court to deny it as both untimely and futile.

Federal Rule of Civil Procedure 15(a) provides that after a responsive pleading has been filed, a party may amend a pleading with "leave of court or by written consent of the adverse

party," and "leave shall be freely given when justice so requires." Factors to be considered in deciding whether to grant leave include "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." Brumbalough v. Camelot Care Centers, Inc., 427 F.3d 996, 1001 (6th Cir. 2005).

In this case, the preliminary pretrial order set a deadline of March 15, 2005 for adding parties, and Plaintiff did not seek an extension of that deadline. Plaintiff's motion is therefore untimely. Furthermore, because the motion was not filed until after the discovery deadline had passed, and after Defendants had filed their motion for summary judgment, Defendants would be prejudiced if the Court were to allow Plaintiff to amend his complaint at this stage of the litigation. Moreover, Plaintiff has yet to identify the individuals he seeks to add as parties, or explain what claims he has against them. For all of these reasons, the Court denies Plaintiff's motion for leave to amend his complaint.

### III. Defendants' Motion for a Protective Order

On November 7, 2005, Defendants filed a motion for a protective order seeking to be excused from responding to interrogatories served on them by Plaintiff on October 31, 2005. Plaintiff has not responded to this motion. Defendants note that the discovery cutoff was September 1, 2005, and that Plaintiff did not serve the interrogatories until October 31, 2005, two days after they filed their motion for summary judgment.[2] Because Plaintiff's discovery requests were filed after the discovery cutoff, the Court grants Defendants' motion for a

---

[2] The Court also notes that Plaintiff did not file a motion, pursuant to Fed. R. Civ. P. 56(f), seeking leave to engage in additional discovery prior to responding to the motion for summary judgment.

4

protective order.

### IV. Defendants' Motion to Strike Gerald Napier's Affidavit

On November 7, 2005, Plaintiff filed an affidavit of Gerald Napier, one of the individuals issued a citation for soliciting funds without a permit. The affidavit was apparently filed in support of Plaintiff's October 27, 2005 memorandum in opposition to Defendants' motion for summary judgment, although the Court notes that the affidavit is not referenced in Plaintiff's brief.[3] Defendants urge the Court to strike Napier's affidavit because by the time they received notice that it had been filed, they had already filed their reply brief. Plaintiff has not responded to Defendants' motion. Because the motion for summary judgment was fully briefed before Plaintiff filed Napier's affidavit, Defendants would be prejudiced if the Court were to consider it. The Court, therefore, grants Defendants' motion to strike.

### V. Defendants' Motion for Summary Judgment

#### A. Standard for Granting Summary Judgment

Defendants have moved for summary judgment on all of Plaintiffs' claims. Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules, which are designed "to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). The standard for summary judgment is found in Federal Rule of Civil Procedure 56(c):

> [Summary judgment] . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

---

[3] The Court also notes that Plaintiff did not move for additional time, pursuant to Fed. R. Civ. P. 56(f), to obtain Napier's affidavit.

Summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." Poller v. Columbia Broadcasting Sys., 368 U.S. 464, 467 (1962) (quoting Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627 (1944)).  See also Lansing Dairy, Inc. v. Espy, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. Lashlee v. Sumner, 570 F.2d 107, 111 (6th Cir. 1978).  The court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Weaver v. Shadoan, 340 F.3d 398, 405 (6th Cir. 2003).

In a motion for summary judgment, the moving party bears the initial burden of showing that no genuine issue as to any material fact exists and that it is entitled to a judgment as a matter of law. Leary v. Daeschner, 349 F.3d 888, 897 (6th Cir. 2003).  All the evidence and facts, as well as inferences to be drawn from the underlying facts, must be considered in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); Wade v. Knoxville Util. Bd., 259 F.3d 452, 460 (6th Cir. 2001). Additionally, any "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-60 (1970).

6

"[T]he mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson</u>, 477 U.S. at 247-48 (emphasis in original).  A "material" fact is one that "would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of [an] appropriate principle of law to the rights and obligations of the parties." <u>Kendall v. Hoover Co.</u>, 751 F.2d 171, 174 (6th Cir. 1984).  <u>See also</u> <u>Anderson</u>, 477 U.S. at 248.  An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248.  <u>See also</u> <u>Leary</u>, 349 F.3d at 897.

If the moving party meets its burden, and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  <u>Celotex</u>, 477 U.S. at 322.  The nonmoving party must demonstrate that "there is a genuine issue for trial," and  "cannot rest on her pleadings." <u>Hall v. Tollett</u>, 128 F.3d 418, 422 (6th Cir. 1997).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. Anderson, 477 U.S. at 252. The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Phillip Morris Companies, Inc., 8 F.3d 335, 340 (6th Cir. 1993). The court may, however, enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence. Anderson, 477 U.S. at 251-52; Lansing Dairy, Inc., 39 F.3d at 1347.

Complaints filed by *pro se* litigants are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Nevertheless, *pro se* litigants must comply with all procedural rules. See McNeil v. United States, 508 U.S. 106, 113 (1993)("we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."). Furthermore, the Sixth Circuit has held that *pro se* litigants are not entitled to special treatment in responding to motions for summary judgment. See Brock v. Hendershott, 840 F.2d 339, 342-43 (6th Cir. 1988)("[w]hen a person . . . chooses to represent himself, he should expect no special treatment which prefers him over other who are represented by attorneys."). With these standards in mind, the Court turns to the merits of Defendants' motion for summary judgment.

**B.     Discussion**

Plaintiff seeks relief in this case pursuant to 42 U.S.C. § 1983. That statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the

8

> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress . . .

42 U.S.C. § 1983. In order to recover under § 1983, a plaintiff must prove that a person, acting under color of law, violated his or her rights as guaranteed by the Constitution or laws of the United States. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970).

In this case, Plaintiff contends that Defendants -- Officer Roose, Chief Jackson, and the Columbus Police Department -- while acting under color of state law, violated his rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.[4] Officer Roose and Chief Jackson are sued in their official and individual capacities. As the Supreme Court explained in Kentucky v. Graham, 473 U.S. 159 (1985), a claim brought against a government employee in his or her *individual* capacity seeks to hold the employee personally liable. However, a claim brought against a government employee in his or her *official* capacity is the equivalent of a claim brought against the governmental entity itself. Id. at 165-66. In this case, then, the claims brought against Officer Roose and Chief Jackson in their official capacities are the equivalent of claims against the City of Columbus.

As an initial matter, the Court feels compelled to discuss the proper scope of Plaintiff's claims. As noted earlier, Plaintiff is not represented by counsel. Although Williams has named only himself as a plaintiff in this action, his complaint contains allegations which lead the Court

---

[4] The Court construes Plaintiff's claims against the Columbus Police Department as claims against the City of Columbus. As Defendants note, in Ohio, police departments are not entities subject to suit. See Jones v. Marcum, 197 F. Supp. 2d 991, 997 (S.D. Ohio 2002).

9

to believe that Plaintiff is seeking to vindicate not only his own constitutional rights, but also those of Shawn Herald, Gerald Napier, and Family Protection. For example, Plaintiff alleges that "Officer Roose did prohibit the freedom of <u>our</u> speech," that "Officer Roose has <u>our</u> papers," that "this officer continued to harass <u>us</u>," and that "he took a special interest in <u>our</u> stance against FCCS and . . . proceeded on to use his power against <u>us</u>." (Compl. ¶¶ 15, 18-20)(emphasis added).

As a non-lawyer, Plaintiff is entitled to represent himself, but has no authority to represent the legal interests of Herald, Napier, or Family Protection. Furthermore, as the Sixth Circuit noted in <u>Greater Cincinnati Coalition of the Homeless v. City of Cincinnati</u>, 56 F.3d 710 (6th Cir. 1995), a plaintiff "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." <u>Id.</u> at 718 (<u>quoting</u> <u>Warth v. Seldin</u>, 422 U.S. 490, 499 (1975)). Therefore, despite the broad allegations contained in the complaint, the Court's inquiry in this case is narrowly limited to the question of whether one of the named defendants violated <u>Plaintiff's</u> constitutional rights. The Court turns first to the claims asserted against Officer Roose and Chief Jackson in their individual capacities.

### 1. Claims Against Officer Roose in his Individual Capacity

Officer Roose argues that Plaintiff has failed to present sufficient evidence from which a reasonable jury could find that he violated Plaintiff's First, Fourth, or Fourteenth Amendment rights. The Court has carefully reviewed the parties' briefs, the depositions, and other evidence submitted by the parties. Finding no genuine issue of material fact, the Court concludes that Officer Roose is entitled to summary judgment as a matter of law on all claims brought against

10

him in his individual capacity.[5]

### a. First Amendment Violations

In Count One of the complaint, Plaintiff alleges that "Officer Roose did prohibit the freedom of our speech threatening to arrest if we did not stop. Threatening to stop our prayer vigil with arrest when he saw we were not raising money on that day [sic]." The Court views Count Three of the complaint as an extension of Plaintiff's First Amendment claim. In Count Three, Plaintiff alleges that, "[e]ven after several conversations and warning about our church being involved in doing the Lord's business to stop the White Collar corruption, this officer continued to harass us. Stopping the protestor's making them put down their signs and dissembles before October 24th 2003 [sic]."[6]

In order to establish a claim based on an alleged violation of the First Amendment, Plaintiff must prove that: (1) he engaged in protected conduct; (2) Officer Roose took an adverse action against him sufficient to deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was taken, at least in part, because of the protected conduct. See Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999). With respect to the first prong of the test, there is no doubt that Plaintiff engaged in protected conduct when he protested

---

[5] In the alternative, Roose argues that he is entitled to qualified immunity. Because the Court finds that Plaintiff has failed to present sufficient evidence from which a reasonable jury could find that Officer Roose violated Plaintiff's constitutional rights, the Court need not address this alternative argument.

[6] The nature of the cause of action set forth in Count Three is unclear. While Plaintiff labels it a claim of "harassment," it clearly implicates First Amendment rights. The Court therefore construes it as a claim seeking relief under § 1983 for alleged violations of the First Amendment. To the extent Plaintiff intended instead to assert a common law claim of "harassment," Roose is still entitled to summary judgment on this claim because, as discussed below, Plaintiff has now admitted that Officer Roose is not the officer who harassed him.

against FCCS outside the Franklin County courthouse.  However, Plaintiff has not presented any evidence to support a finding that Officer Roose took an adverse action against him.

It appears from the record that Plaintiff has now realized that he incorrectly identified Officer Roose as the officer who threatened to arrest him and his fellow protestors.[7]  Roose has submitted an affidavit stating that he never threatened to arrest or harass Plaintiff, and never stopped him, detained him, or issued a citation to him.  Roose also denies taking any adverse action against Plaintiff based on Plaintiff's opinions or beliefs concerning FCCS, denies doing anything to deter Plaintiff from expressing those opinions and beliefs, and denies expressing his own opinions about FCCS to Plaintiff.  (Roose Aff. ¶¶ 4-7, 9; Ex. 5 to Mot. Summ. J.).  Plaintiff has admitted that Officer Roose never approached him, never threatened to arrest him, and never gave him a citation.  (Pl. Dep. at 102, 123, 130).  Plaintiff testified that he was personally confronted by a black officer and a white officer earlier in the week, but admitted that neither was Officer Roose.  (Id. at 104, 110).  Moreover, Plaintiff admitted at his deposition that Officer Roose never expressed any opinions to him concerning the subject of the protest.  (Id. at 141).[8]  Because Plaintiff has failed to present sufficient evidence to support a finding that Officer Roose took any adverse action against him, the Court concludes that Officer Roose is entitled to summary judgment on these First Amendment claims.

---

[7] Officer Roose and Plaintiff were both in attendance at Gerald Napier's deposition. When Officer Roose introduced himself, Plaintiff stated to counsel for Defendants that, "[t]his is not Mr. Jeffrey Roose."  (Napier Dep. at 12).

[8] Gerald Napier also testified that Officer Roose never told him that he was mad because they were protesting against FCCS.  (Napier Dep. at 107).

### b. Fourth Amendment Violations

In Count Two of the complaint, Plaintiff alleges that Officer Roose violated the Fourth Amendment's guarantee against unreasonable seizures. Plaintiff alleges that, "Officer Roose has our papers, effects, office dolly that was used to carry documents boxes and money, and all of our documents have been seized." (Compl. ¶ 18). Plaintiff contends that these things belonged to him and to his church and were unreasonably seized in connection with the citations issued to Shawn Herald and Gerald Napier for soliciting charitable donations without a permit.[9] Plaintiff concedes that the officers had the right to seize the money collected, but argues that there was no need to take the sandwich boards, petitions, and literature. Defendants, however, argue that these items are evidence that Herald and Napier were soliciting funds for Family Protection. Defendants further argue that they have properly retained custody of this evidence because Shawn Herald failed to appear in court in response to the citation and there is still an outstanding warrant for his arrest. (Ex. 10 to Mot. Summ. J.).

Regardless of whether the seizure of Plaintiff's property was proper, the Court finds that, based on the evidence presented, no reasonable jury could find that Officer Roose participated in that seizure. Both Napier and Plaintiff testified at their depositions that Officer Roose did not confiscate the property in question or take it away. (Napier Dep. at 111; Pl. Dep. at 108-09). Plaintiff testified that as he watched two other officers take his property away, he discussed the matter with an officer he thought was Officer Roose, although he was "not 100% sure." Plaintiff

---

[9] Plaintiff claims that he had a permit from "God" and from the "Constitution of the United States." (Pl. Dep. at 112). It is undisputed, however, that Plaintiff did not obtain a permit to solicit funds as required by Columbus City Code § 525.03. Plaintiff has not challenged the constitutionality of that ordinance.

13

explained to him that he owned the property that had been seized and wanted it back. This officer allegedly took down the information and agreed to look into the matter. (Pl. Dep. at 109-110). In his memorandum in opposition to the motion for summary judgment, Plaintiff argues that Officer Roose ordered the other officers to seize the property. However, Plaintiff has presented absolutely no evidence to support this allegation.

In short, it is undisputed the Officer Roose did not seize Plaintiff's property, and there is no evidence that he ordered the property to be seized. Because there is no evidence to support a finding that Officer Roose violated Plaintiff's Fourth Amendment rights by unlawfully seizing his property, the Court grants Officer Roose's motion for summary judgment on this claim.

### c. Fourteenth Amendment Violation

In Count Four of the complaint, Plaintiff alleges that "Officer Roose abused his power to stop the protest against FCCS. He took a special personal interest in our stance against FCCS and regardless of his knowledge expounded to him by us the officer proceeded on to use his power against us [sic]." (Compl. ¶ 20). Plaintiff alleges that this conduct violated his rights as guaranteed by the Fourteenth Amendment.

As discussed in connection with the First Amendment claims, Plaintiff has presented no evidence to support these allegations. Plaintiff admits that Officer Roose took no action to stop him from protesting against FCCS. (Pl. Dep. at 104, 123, 130). Neither is there any evidence that Officer Roose had any personal interest in the subject of Plaintiff's protest. (Id. at 141). For the reasons previous stated, the Court concludes that Officer Roose is entitled to summary judgment on this claim also.

### 2. Claim Against Chief Jackson in his Individual Capacity

In Count V of his complaint, Plaintiff alleges:

> Chief James Jackson allowed two plain clothes police officers too [sic] assist Franklin County Children Services in the wrongful removal of Lakisha Williams on or about March 20 2003 [sic]. There had been an improper investigation by FCCS and the child was not in any imminent danger. The child still remains in custody till [sic] this day.

(Compl. ¶ 22). While Plaintiff does not identify the nature of his claim against Chief Jackson, the Court construes it as an alleged violation of Plaintiff's substantive due process rights under the Fourteenth Amendment.

The claim brought against Chief Jackson in his individual capacity is governed by Bellamy v. Bradley, 729 F.2d 416 (6th Cir. 1984). In that case, the Sixth Circuit held that a supervisor cannot be held personally liable under § 1983 on the basis of *respondeat superior*. A supervisor is subject to personal liability only if the supervisor "encouraged the specific incident of misconduct or in some other way directly participated in it." Id. at 421. At a minimum, the supervisor must have "implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending [officers]." Id. (citing Hays v. Jefferson County, 668 F.2d 869, 872-74 (6th Cir. 1982)).

Chief Jackson has submitted an affidavit stating that he was not present at Children's Hospital on the date in question and did not authorize any plain clothes officers to assist FCCS in taking custody of Plaintiff's daughter. (Jackson Aff. ¶ 12; Ex. 6 to Mot. Summ. J.). Moreover, Plaintiff admitted at his deposition that Chief Jackson was not present when the officers assisted FCCS in taking custody of Lakisha, and that he has no evidence that Chief Jackson gave the

officers permission to do so. (Pl. Dep. at 129).[10]

Because Plaintiff has failed to present sufficient evidence from which a reasonable jury could find that Chief Jackson "encouraged the specific incident of misconduct or in some other way directly participated in it," Chief Jackson is entitled to summary judgment on Plaintiff's § 1983 claim brought against him in his individual capacity.

### 3. Municipal Liability

The Court turns next to Plaintiff's claims brought against the City of Columbus and against Officer Roose and Chief Jackson in their official capacities. While a municipality may be considered a "person" for purposes of § 1983 liability, it cannot be held liable on the basis of *respondeat superior*. In other words, the City of Columbus cannot be held vicariously liable for misconduct of its employees. A municipality can be liable under § 1983 only if an official policy, practice or custom of the city was the moving force behind the alleged constitutional violations. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978). Plaintiff's complaint fails to allege the existence of any official policy, practice or custom of the City of Columbus that caused the alleged constitutional violations. In his memorandum in opposition to the motion for summary judgment, however, Plaintiff argues that the City has an unwritten policy of abusing its citizens, and hires and tolerates employees who abuse their power. Plaintiff has offered no evidence to support these allegations.

In any event, in this case, Plaintiff's claims of municipal liability fail as a matter of law. As the Sixth Circuit has noted:

---

[10] Plaintiff also admitted that Chief Jackson was not present in October of 2003 when police officers allegedly violated Plaintiff's constitutional rights by interfering with the protest against FCCS. (Pl. Dep. at 129).

16

> For municipal liability to exist . . ., a constitutional violation must take place. <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986); <u>Watkins v. City of Battle Creek</u>, 273 F.3d 682, 687 (6th Cir.2001)("If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983.")

<u>Voyticky v. Village of Timberlake</u>, 412 F.3d 669, 679 (6th Cir. 2005).

Because the Court has determined that, based on the evidence presented, no reasonable jury could find that either Officer Roose or Chief Jackson violated Plaintiff's constitutional rights, Plaintiff's claims brought against the City of Columbus and against Chief Jackson and Officer Roose in their official capacities also fail as a matter of law.

**VI. Conclusion**

For the reasons stated above, the Court **DENIES** Plaintiff's motion for leave to amend his complaint (Record at 36), and **GRANTS** Defendants' motion for a protective order (Record at 38), and Defendants' motion to strike Gerald Napier's affidavit (Record at 42). Finding no genuine issue of material fact remaining, the Court also **GRANTS** Defendants' motion for summary judgment. (Record at 26). The Clerk is directed to enter judgment in favor of Defendants.

**IT IS SO ORDERED.**


Date: March 16, 2006					**/s/ John D. Holschuh**
						John D. Holschuh, Judge
						United States District Court